UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER P. SETERA and<br>LAVERGNE M. SETERA,<br><br>        Plaintiffs,<br><br>        v.<br><br>NATIONAL CITY BANK, an Ohio<br>banking corporation,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 07 C 2978<br>)<br>)   Judge Rebecca R. Pallmeyer<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Roger and Lavergne Setera brought this suit against Defendant National City Bank, charging, among other things, that the bank failed to exercise the requisite amount of care when it deposited Plaintiffs' check into the account of one of the bank's account holders. Defendant has moved under Rule 12(b)(6) to dismiss the Plaintiffs' ten-count complaint, claiming that the bank's actions violated no legal duties it owed to Plaintiffs. For the reasons stated below, Defendant's motion to dismiss is granted.

## FACTUAL BACKGROUND

For the purpose of deciding this Rule 12(b)(6) motion, the court accepts all well-pleaded facts in Plaintiffs' complaint as true. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). On or about January 4, 2005, Lavergne Setera wrote out a personal check for $500,000 (hereinafter "Plaintiffs' check"), payable to "M.B.S. Clearing." (Compl. ¶ 6.) The check indicated that it was for the purchase of an "F.D.I.C. C.D. at 5.69%." (*Id.*) The check was mailed to "BankWatch, Attn: Donna A Walls, 676 A Ninth Avenue, #260, New York, NY 10036." (*Id.* ¶ 7.) The following month, on or about February 4, 2005, the check was endorsed in the name of what appears to be "MBS Clearing Inc." and deposited into account # 0628500967 at the bank. (*Id.* ¶ 8.) That account number belonged to a checking account maintained at the bank in the name of "Management Pros Incorporated" ("MPI"), an account opened on October 8, 2002 by Brian Jines.

(*Id.* ¶¶ 9, 12.) Jines was the only authorized signatory for that account. (*Id.* ¶ 12.)

Between February and August of 2005, approximately $1.17 million in other checks were made payable to "M.B.S. Clearing" and deposited into the MPI account. (*Id.* ¶ 13.) For more than one year prior to his deposit of Plaintiffs' check, Jines had been withdrawing money from the MPI account. From December 2003 until February 2005, approximately eighty-seven checks, totaling $536,400, were made payable to Jines, negotiated for cash at the bank, and drawn against the MPI account. (*Id.* ¶ 14.) Beginning in February 2005 and continuing until August 25, 2005, Jines made an additional 143 checks, totaling approximately $973,590, payable to cash and drawn against the MPI account. (*Id.* ¶ 15.) In August and September 2005, the bank initiated an investigation into the MPI account, ultimately freezing the remaining funds. (*Id.* ¶ 17.)

Plaintiffs–who did not hold any account with the bank and were not otherwise customers of the bank–were informed of the suspicious activity on January 10, 2007, when they received a letter from the FBI informing them of an investigation into the matter. (*Id.* ¶ 18.) They initiated this suit against the bank a few months later.

## **DISCUSSION**

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court not only accepts as true the well-pleaded facts of the complaint, but also draws all reasonable inferences in favor of the non-moving party. *See, e.g.*, *Tamayo*, 526 F.3d at 633. The court need not, however, "accept as true legal conclusions or unsupported conclusions of fact" stated in the complaint. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). In this diversity action,[1] Plaintiffs identify ten state and federal causes of action. For the reasons that follow, all

---

[1] Plaintiffs incorrectly state in their first amended complaint that this court has subject matter jurisdiction pursuant to 735 ILCS 5/2-209, an Illinois statute that bestows jurisdiction only on Illinois state courts. Although Plaintiffs originally filed their complaint in state court, Defendant removed the case to this court pursuant to 28 U.S.C. § 1441. Plaintiffs' amended complaint should recognize this court's jurisdiction as premised on diversity of citizenship under 28 U.S.C. § 1332,
(continued...)

counts are dismissed.

**A.     Civil Conspiracy**

Plaintiffs' claim of civil conspiracy under Illinois law fails because they have not alleged sufficient facts giving rise to an inference that the bank was party to an agreement to defraud with either Jines, M.B.S. Clearing, or MPI. Plaintiffs claim that an implicit agreement existed, *see McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102, 134, 720 N.E.2d 242, 258 (1999), based on the following facts: the bank allowed M.B.S. Clearing to open an account without a tax identification number; the bank failed to inquire into M.B.S. Clearing's corporate status; the bank failed to inquire into Jines's frequent withdrawals from the account; and the bank accepted Plaintiffs' check. (Compl. at Count I, ¶ 19.) These actions by the bank may show a less thorough investigation of the M.B.S. Clearing account than Plaintiffs would have liked, but they fall far short of establishing any agreement, whether implicit or explicit, with Jines or M.B.S. Clearing to defraud Plaintiffs. An implicit agreement does not require explicit acknowledgment of an agreement, but it does require that the defendant "knowingly agrees with another to commit an unlawful act." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64, 645 N.E.2d 888, 894 (1994).

This conclusion is bolstered by the requirements of Rule 9(b), which requires plaintiffs to plead fraud with "particularity." FED. R. CIV. P. 9(b); *see also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (heightened pleading standards also apply to claims alleging a conspiracy to defraud). Plaintiffs' allegations at most show that the bank should have noticed the conspiracy earlier, but a "defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock*, 164 Ill.2d at 64, 645 N.E.2d at 894. The circumstances do not support Plaintiffs' conclusory

---

[1](...continued)
as Plaintiffs are Oregon residents, Defendant is an Ohio corporation with its principal place of business in Ohio, and the amount in controversy (at least $500,000) exceeds $75,000.

3

statements that the bank "implicitly agreed" to assist the fraud. (Compl. at Count I, ¶ 22); *see also Eisenhauer v. Stern*, No. 99-6422, 2000 WL 136011, at *2 (N.D. Ill. Jan. 27, 2000) ("[S]imply mouthing conclusory assertions of 'conspiracy' in the context of an asserted fraud will not suffice."). Plaintiffs' conspiracy claim is dismissed.

**B.      Breach of the Fiduciary Obligations Act**

Plaintiff's next cause of action purportedly arises under Illinois's Fiduciary Obligations Act, 760 ILCS 65 (the "Act"). As a general rule, the Act does not require a bank receiving deposits "to inquire whether the fiduciary is committing thereby a breach of his obligation as a fiduciary" and the bank is therefore authorized to pay the amount of the deposit to the fiduciary "without being liable to the principal." 760 ILCS 65/9. The Act carves out two exceptions to this rule, but–even assuming that Jines, M.B.S. Clearing, and/or MPI were fiduciaries for Plaintiffs and the Act applies here–Plaintiffs have not alleged sufficient facts that show either exception applies.

The first exception states that the bank is not authorized to pay the fiduciary if it has "actual knowledge" that the fiduciary is breaching his obligation in depositing the check. *Id.* "Actual knowledge" means "express factual information that the funds are being used for private purposes in violation of [a] fiduciary relationship." *Cont'l Cas. Co. v. Am. Nat'l Bank & Trust Co.*, 329 Ill. App. 3d 686, 703, 768 N.E.2d 352, 365 (1st Dist. 2002) (citation omitted). Plaintiffs' factual allegations do not support a finding that the bank had knowledge either that Plaintiffs were in a fiduciary relationship with Jines or that Jines was using the funds for private purposes. The most the bank could be charged with is knowledge that Jines was making frequent withdrawals from the MPI account. This level of knowledge, however, does not amount to "express factual information" that the funds were being used for Jines's private purposes, and certainly does not create an inference that the bank knew of a fiduciary relationship between Jines and the Plaintiffs. Therefore, this exception does not apply.

The second exception makes a bank liable for violations of a fiduciary relationship if the

4

bank has "knowledge of such facts that its action in receiving the deposit . . . amounts to bad faith." 760 ILCS 65/9. Plaintiffs claim that by the time their check was deposited into the MPI account, the bank was aware of a number of suspicious facts (discussed above) that demonstrate that the bank acted in bad faith when it accepted Plaintiffs' check for deposit. "Bad faith" is demonstrated by showing that it was "commercially unjustifiable for the payee to disregard and refuse to learn facts readily available." *Cont'l Cas. Co,* 329 Ill. App. 3d at 703, 768 N.E.2d at 365 (citing *Appley v. West*, 832 F.2d 1021, 1031 (7th Cir. 1987)). Here, neither the bank's failure to investigate the MPI account activity nor the bank's deposit of Plaintiffs' check were "commercially unjustifiable." Plaintiffs rely on *Continental Casualty* for their claim that the bank's conduct constituted commercially unjustifiable behavior, but the facts of *Continental Casualty* differ significantly. In that case, the plaintiff, an account holder at the defendant bank, sued the bank when it allowed one of plaintiff's employees, who was not a signatory to plaintiff's account, to deposit nine checks–ranging from $40,000 to $50,000–made out by plaintiff and payable to defendant into the employee's own account. *Id.* at 691-92, 768 N.E.2d at 357. The court held that it was commercially unreasonable for the bank to have in place a deposit procedure that allowed a non-signatory of the entity account to deposit checks into his own account when the checks were clearly made out to the defendant. *Id.* at 704, 768 N.E.2d at 366-67. In the present case, Plaintiffs were not account holders at the bank, Jines was in fact a signatory for the MPI account, and the checks were made out to another entity (M.B.S. Clearing), not to the Defendant bank itself. On these very different facts, a failure to investigate the MPI account was not "commercially unjustifiable."

Nor can Defendant be said to have behaved in a commercially unjustifiable manner merely by depositing checks signed by one entity into another entity's account. Such a practice is neither uncommon nor illegal–once an instrument is endorsed in blank without any restrictions, as the M.B.S. Clearing check at issue here was after it was endorsed, the instrument becomes bearer paper that may be negotiated by the holder (MPI) without any further endorsement. 810 ILCS 5/3-

5

205. The *Continental Casualty* court based its finding of unreasonableness on the fact that the checks were not only deposited into a different account than the named payee, but that the named payee *was the bank itself*. *Cont'l Cas. Co.*, 329 Ill. App. 3d at 704, 768 N.E.2d at 367. The failure to recognize this obvious fraud occurring under its very nose was what was commercially unjustifiable. *See Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 399 (7th Cir. 2004) ("a bank which allows a person to deposit a check made payable *not to him but to the bank* . . . in his own account is liable to the drawer if it fails to make a reasonable effort to determine whether the drawer really meant to authorize so suspect a transaction.") (emphasis added). Thus, neither Defendant's failure to open an inquiry into the MPI account nor the actual deposit of Plaintiffs' check into that account constituted commercially unjustifiable behavior.

**C.  Commercial Bad Faith**

Plaintiffs' claim that Defendant violated a legal duty it owed to Plaintiff by acting with commercial bad faith fails for the simple reason that Illinois does not recognize this as a cause of action on these facts. "[N]o Illinois case or statute supports a cause of action for bad-faith dealing outside the areas of insurance and employment law." *Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1348 (7th Cir. 1983). Plaintiff cites no more recent authority, nor is the court aware of any, that suggests the Illinois courts have since expanded this cause of action to include claims such as Plaintiffs'.

**D.  Negligence**

A claim for negligence requires that the defendant breach a duty of care owed to the plaintiff. Plaintiffs here can establish no such duty that the bank owed to them because they were not customers at the bank. Courts have consistently held that banks do not owe a general duty of care to non-customers. *See Conder*, 384 F.3d at 400; *Thompson v. Capital One Bank, Inc.*, 375 F. Supp. 2d 681, 683-84 (N.D. Ill. 2005). Plaintiffs' continued reliance on the *Continental Casualty* case is again misplaced, because in that case the plaintiff was an account holder at the defendant

bank and thus the defendant bank did owe the plaintiff a duty of care arising out of the contract between the account holder and the bank. 329 Ill. App. 3d at 692-93, 768 N.E.2d at 357-58. Strong policy reasons also support this refusal to impose a general duty of care on banks; given the large amount of business that runs through banks, "restrict[ing] all deposits until [the bank satisfies] itself that the depositor is entitled to the money would pour molasses on the gears of commerce." *Bell Bros. v. Bank One, N.A.*, 116 F.3d 1158, 1160 (7th Cir. 1997). In the absence of any duty that Defendant owed Plaintiffs, the negligence claim must fail.[2]

**E.    Conversion**

Plaintiffs also claim that the bank's deposit of their check into the MPI account constituted conversion. Claims for conversion of checks are governed by the Uniform Commercial Code ("UCC"). *See Ohio Cas. Ins. Co. v. Bank One*, No. 95-6613, 1996 WL 507292, at * 11 (N.D. Ill. Sept. 5, 1996.) The relevant provision, as adopted by Illinois, states that "an action for conversion of an instrument may not be brought by (i) the issuer . . . of the instrument . . . ." 810 ILCS 5/3-420(a). Plaintiffs here were the issuers of the instrument in question and thus did not have the necessary property interest in the check to support a claim for conversion. Indeed, if any participant in this sequence of events could plausibly maintain an action for conversion, it would be M.B.S. Clearing, since a check that was intended for it instead ended up in the MPI account.[3] Accordingly, Plaintiffs lacked the requisite interest in the check at the time it was allegedly converted and thus cannot maintain a conversion claim.

**F.    Unjust Enrichment/Contract Implied in Law**

As counts VI and VII of their complaint, Plaintiffs assert claims for unjust enrichment and

---

[2]    The court does not reach Defendant's alternative argument that the negligence claim is barred by the statute of limitations.

[3]    Contrary to Plaintiff's assertion (Pl.'s Resp. at 2), the court is not actually suggesting that M.B.S. Clearing could sustain such a claim, as the evidence suggests that M.B.S. Clearing and MPI were probably complicit with Jines in the fraud.

breach of a contract implied in law. In Illinois, these are synonymous causes of action–a defendant is unjustly enriched when it "breaches" an implied-in-law contract. *See McKay v. Kusper*, 252 Ill. App. 3d 450, 463, 624 N.E.2d 1140, 1150 (1st Dist. 1993) (unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law" (citation omitted)); *see also Partipilo v. Hallman*, 156 Ill. App. 3d 806, 810, 510 N.E.2d 8, 11 (1st Dist. 1987) ("unjust enrichment [is] sometimes referred to as . . . a contract implied in law . . . ."). To recover under an unjust enrichment theory, a plaintiff must show "that the defendant has voluntarily accepted a benefit which it would be inequitable for him to retain without payment, since the law implies a promise to pay compensation when value of services is knowingly accepted." *Premier Elec. Const. Co. v. LaSalle Nat. Bank*, 132 Ill. App. 3d 485, 496, 477 N.E.2d 1249, 1257 (1st Dist. 1984) (citation omitted). Here, Plaintiffs allege that it would be inequitable for the bank to retain the benefits from the use of the funds from Plaintiffs' check, "namely the interest and investment income, loans, and other benefits derived by Bank from permitting the improperly endorsed check to be deposited with Bank." (Pl.'s Resp. at 20.)

Plaintiffs' argument fails for two reasons. First, the check was not improperly endorsed, as Plaintiffs allege. Plaintiffs claim that the check was improperly endorsed because it was made payable to M.B.S. Clearing but endorsed by "MBS Clearing Inc." This alteration does not render the endorsement ineffectual, however. The UCC states, "If an instrument is payable to a holder under a name that is not the name of the holder, indorsement may be made by the holder in the name stated in the instrument or in the holder's name or both . . . ." 810 ILCS 5/3-204(d). MBS Clearing Inc. therefore could effectively endorse the check, even though it was made payable to M.B.S. Clearing. Second, Plaintiffs assert that the UCC implies a promise on the part of banks to exercise ordinary care, but that assertion fundamentally misunderstands implied-in-law contracts. Such a contract exists where courts "imply from the circumstances or the relation of the parties a promise to pay." *Borowski v. De Puy, Inc.*, 850 F.2d 297, 301 (7th Cir. 1988) (quoting *Arthur*

*Rubloff & Co. v. Drovers Nat'l Bank of Chi.*, 80 Ill App. 3d 867, 875, 400 N.E.2d 614, 620 (1st Dist. 1980)). Plaintiffs present no theory as to what action taken by Defendant gave rise to an implied promise to pay the Plaintiffs. Nor can the court imagine such a scenario, which would require that a bank be expected to pay an individual whose check is ultimately deposited in an account held by one of the bank's customers. Plaintiffs' claims for recovery under an unjust enrichment/implied in law contract theory therefore must be dismissed.

### G.    Breach of Ordinary Care under UCC § 4-406[4]

Plaintiffs also claim that the bank breached a duty of ordinary care that it owed to Plaintiffs, pursuant to UCC § 4-406. The very title of that section, however–"*Customer's* duty to discover and report unauthorized signature or alteration"–shows the inapplicability of this provision to this case. 810 ILCS 5/4-406 (emphasis added). As its title makes clear, this section is primarily concerned with delineating a bank customer's duties with respect to discovering unauthorized signatures; nonetheless, it does also allow for some liability when a bank fails "to exercise ordinary care in paying" the questionable instrument. *Id.* at 5/4-406(e). Even this provision requires that the plaintiff be a "customer" of the bank that failed to exercise ordinary care, which Plaintiffs in this action admittedly are not. *Id.* Section 4-406 simply has no applicability to a case such as this, where the plaintiffs are not customers of the defendant bank, and this claim must be dismissed.

### H.    Declaratory Judgment

A declaratory judgment is not an appropriate remedy here. "The purposes of declaratory judgments are to 'clarify[] and settl[e] the legal relations at issue' and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 749 (7th Cir. 1987) (quoting BORCHARD, DECLARATORY

---

[4]    Both parties repeatedly cite to UCC § 4-406(3) as the applicable section here. Neither the UCC nor the Illinois statute that adopts it contain a provision that is so numbered. The analysis that follows assumes that Plaintiffs intended to proceed under § 4-406(e), as that is the only subsection that refers to an obligation to provide ordinary care.

JUDGMENTS 299 (2d ed. 1941)). Plaintiffs have sought damages on several substantive grounds, and the determination of those various claims clarifies the legal relations between them and Defendant. It is thus not clear what purpose a declaratory judgment would serve, and the court declines to issue one. *See Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) ("Federal courts have discretion to decline to hear a declaratory judgment action . . . ." (quoting *Tempco*, 819 F.2d at 747)).

I.      **Accounting**

Finally, Plaintiffs also asserted a claim for an accounting. An accounting is unnecessary here, however, because none of Plaintiffs' claims entitle them to any monetary recovery.

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss Plaintiffs' First Amended Complaint [29] is granted.

ENTER:

Dated: September 26, 2008

_____
REBECCA R. PALLMEYER
United States District Judge